HAROLD P. FARRINGTON, Respondent, Appellant, *v.* STEEL COMPANY OF AMERICA (a Corporation), Defendant, Impleaded with JAMES A. CAREY, Appellant, Respondent, and FRANK L. CONNABLE and Others, Respondents.

First Department, April 21, 1922.

Contracts — action to recover money loaned and to impress lien on certain corporate stock held by third person as trustee — money loaned to one T. and secured by agreement of holding corporation to deliver bonds to defendant C. in exchange for stock in another corporation — part only of stock held by defendant C. belonged to him personally — agreement between holding corporation and other corporations not consummated and stock transferred by defendant C. to holding corporation turned over to third person in trust — loan paid to defendant C. who retained sixty per cent, turning over forty per cent to T.— judgment secured against T., maker of note, and execution returned unsatisfied — existence of adequate remedy at law as defense must be alleged affirmatively where complaint alleges no adequate remedy at law — usury not found — plaintiff having full knowledge of transaction has no lien on stock held by defendant C. belonging to others — plaintiff has lien on defendant C.'s stock held in trust — defendant C. liable only to extent of loan actually retained by him.

In an action to recover $100,000 and interest loaned by the plaintiff to one T. and to impress a lien on certain stock held by defendant C., a part only of which stock was owned by C. personally, it appeared that the defendant C. retained $60,000 of the amount of the loan and that T. had $40,000; that the loan was secured by an agreement of a holding corporation to deliver to the defendant C. 210 first mortgage and collateral trust bonds to be thereafter issued by the holding corporation; that C. held eighty-two per cent of the stock of his corporation which was to be turned over to the holding corporation on condition that the holding corporation could acquire a controlling interest in several other companies; that at the time the defendant C. turned over the stock to the holding corporation and received from it a receipt, it was understood and believed by the plaintiff and the defendant C. that the holding corporation had received the consent of the other corporations to go into the merger and that the stock of said corporation was then on the way; that as soon as the defendant C. found out that the other companies would not enter into the merger, he demanded that the stock transferred by him to the holding corporation be returned; that said stock was put in the hands of a third person under a trust agreement between the holding corporation and the corporation issuing the stock; that on the transfer of the stock to the holding corporation, it issued *ad interim* certificates, one for $210,000 to the defendant C., which he indorsed to T., who, in turn, indorsed the same to plaintiff; that this certificate was the agreement given as security for the loan to T.; that a judgment was secured against T., and an execution returned unsatisfied.

*Held*, that inasmuch as the complaint alleges that the plaintiff has no adequate remedy at law, the failure of the defendant to allege that there was an adequate remedy at law, amounts to an acceptance of the equitable issue presented, which must be determined upon its merits.

The note given by T. for the $100,000 loan was for the face value of $110,000, but it was recited therein that $10,000 was not to be considered as a bonus upon the advancement of the money but as compensation to the plaintiff for facilitating the transfer of the properties, and, while the transaction suggests a usurious attempt, usury was not pleaded in the answer and the court has

found that there was no usury, and with that finding the Appellate Division will not interfere.

Inasmuch as the plaintiff had full knowledge of the capacity in which the defendant C. held the stock in his corporation that belonged to third persons, which was for the purpose of consummating the merger, the plaintiff has no equity to impress a lien, for the money loaned by him, upon the stock of the other stockholders which the defendant C. held.

The plaintiff has a lien upon the stock owned by the defendant C. personally, represented by the *ad interim* certificate of the holding corporation for the purpose of securing the money which the defendant C. received from the plaintiff.

Inasmuch as it was understood between the plaintiff and T., the signer of the note, that forty per cent of the money was for the benefit of T., the defendant C. cannot be held liable for more than he himself received.

Though at the time of the transfer of the stock to the holding corporation the plaintiff was the secretary and a director thereof, he had no more knowledge than that possessed by the defendant C., and knowledge cannot be inferred, for it was shown that he was elected on the very day that the transaction occurred.

DOWLING, J., dissents.

APPEAL by the defendant, James A. Carey, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of May, 1921, upon the decision of the court rendered after a trial at the New York Special Term.

Appeal by the plaintiff, Harold P. Farrington, from so much of said judgment as dismisses the complaint herein as against certain defendants.

*Collin, Wells & Hughes* [*John L. Wells* of counsel], for the plaintiff.

*Phillips, Mahoney & Leibell* [*Jeremiah T. Mahoney* of counsel; *Walter L. Post* with him on the brief], for the defendant Carey, and the defendants Connable and others.

SMITH, J.:

The action is brought primarily against the defendant Carey to recover the sum of $100,000 and interest, loaned by the plaintiff to one Tevis, for which the plaintiff held the promissory note of said Tevis, secured by an agreement of the Steel Company of America to deliver to the defendant Carey 210 first mortgage and collateral trust gold bonds, to be thereafter issued by the defendant Steel Company of America, the said agreement having been assigned by the defendant Carey to Tevis, and by Tevis to the plaintiff, and delivered with the note of Tevis to the plaintiff. Upon the receipt of said note, and this agreement as collateral thereto, plaintiff gave his check to the defendant Carey for $100,000, which Carey had cashed, and from the avails of such check he retained the sum of $60,000 and gave to Tevis the sum of $40,000.

The Steel Company of America was a corporation without any assets, except assets of the value of about $5,000. It was organized

for the purpose of procuring the stock of various manufacturing corporations by the issuance of stock and bonds of the said Steel Company in exchange for the stock of the said various corporations which it proposed to purchase. Tevis was a promoter, and he, with one Shellito, caused the formation of the Steel Company, and endeavored to interest various corporations to sell their stock to the Steel Company. The Standard Stoker Company was one of the corporations whose stock Tevis endeavored to buy for the said Steel Company, and also the Garford Manufacturing Company and the Cleveland Automatic Machine Company, and other companies. Among the other companies was an oil company which was owned by the defendant Carey. The defendant Carey was the vice-president and general manager of the Stoker Company, and the other defendants, except Post, were stockholders of the Stoker Company who had delivered their stock to Carey indorsed in blank for the purpose of selling the same to the said Steel Company upon terms proposed. The proposition of the Stoker Company was to sell to the Steel Company about eighty-two per cent of the stock of the Stoker Company, which was held by Carey and the other defendants, except Post, for the sum of $1,100,000 of the first mortgage and collateral trust gold bonds, and $1,100,000 of the preferred stock. Post was simply the attorney for Carey and for the Stoker Company, and at the time of the trial was holding the certificates of stock of the Stoker Company, upon which the plaintiff seeks to impress a lien under a trust agreement between the Steel Company and the Stoker Company. No personal judgment is asked against him. The proposition of the Stoker Company was conditioned upon the purchase by the Steel Company of the Garford Manufacturing Company and the Cleveland Automatic Machine Company, and this proposition was accepted by the said Steel Company. Various negotiations were had with the Garford Company and with the Automatic Machine Company, and such negotiations were pending upon June 13, 1916, when a meeting was held at which were present the directors of the Steel Company, Carey, Tevis, and this plaintiff, and Post. It was there represented in behalf of the Steel Company that the Garford Company and the Automatic Machine Company had consented to go into the merger and transfer their stock to the Steel Company. The assurances thus given were accepted by Carey, who held the stock of the Stoker Company for transfer to the Steel Company, and he thereupon turned over to the Steel Company all the stock which he thus held, amounting to about 82 per cent, as before stated, of the full stock issued of the Stoker Company. A receipt was given by the Steel Corporation, which reads as follows:

" Received of J. A. Carey, Esquire, under the contract existing by reason of his offers of May 17th, 1916, and the acceptance by the Steel Company of America of May 18th, 1916, 1126 shares of Preferred and 20,393 shares of Common stock of the Standard Stoker Company.

" This stock is received and held for the purpose of delivery to the Trustee and inclusion as collateral under the Trust Deed to be executed by the Steel Company of America covering its issue of First Mortgage and Collateral Trust Gold Bonds, June 13, 1916.

" THE STEEL COMPANY OF AMERICA,

" By J. B. HANNA, *Treasurer.*"

There was also issued by this Steel Company this agreement to give to defendant Carey $210,000 of the first mortgage and collateral trust gold bonds, and providing that interim certificates should be issued in pursuance of that agreement, providing for the issuing of the bonds. Thereupon Carey indorsed the certificates to Tevis and Tevis indorsed the same to the plaintiff, who at the same time gave his check to Carey for the sum of $100,000. Within a short time thereafter it was learned by Carey that the Garford Company and the Automatic Machine Company refused to go into the merger or to sell their stock to the Steel Company of America, whereupon Carey demanded the return of the Stoker Company stock which he had deposited. This was assented to by the Steel Company, and the stock was placed in the hands of the defendant Post as trustee, to be delivered as directed by the Steel Company and the defendant Carey. It is apparent that the original purpose of this trust in Post was to hold this stock with the hope of inducing the Garford Company and the Automatic Machine Company to reconsider their determination and enter into the merger; and Carey and the Stoker Company have been, at all times, willing to consummate the arrangement and sell to the Steel Company of America, provided these other companies would agree to join the merger.

Upon learning that the Stoker Company stock deposited with the Steel Company had been returned, the plaintiff demanded of Carey his $100,000. Carey offered to pay to the plaintiff the sum of $60,000, which he had secured out of the transaction in full payment, but was unwilling to return the $40,000 thereof which he had given to Tevis. Thereupon this action was brought against Carey to recover the $100,000, and also as against his codefendants and Post to procure a lien upon the Stoker stock which had been deposited with the Steel Company of America and thereafter withdrawn by Carey, for the payment of the said

note. The trial court has directed a judgment against Carey personally for the full $100,000 and interest, which amounts to about $128,000; and he has also impressed a lien for the payment thereof upon so much of the Stoker stock as belonged to the defendant Carey personally, but has refused a lien upon the stock which belonged to his codirectors. The plaintiff's appeal is from so much of the judgment as refuses to impress the lien upon the stock of the codefendants. The defendant Carey's appeal is from the entire judgment, the defendants claiming that Carey has no personal liability and also that Carey's stock cannot be impressed with a lien for the payment of any part of this sum.

Upon the defendant's appeal it is first contended that there was an adequate remedy at law. The complaint states that there is no adequate remedy at law, and under that allegation proof was accepted that judgment had been obtained against Tevis upon the note, and execution had been returned unsatisfied. Without an allegation in the answer that there is an adequate remedy at law, defendant will be deemed to have accepted the equitable issue presented, which must be determined upon its merits.

The defendant again contends that this loan was void for usury. The facts upon which this contention rests are as follows: When this $100,000 loan was made by Farrington, he took a note from Tevis for $110,000, payable four months from date. In the agreement under which said note was given it was stated: " It is understood that $10,000 of said note of $110,000 represents compensation to said Farrington for facilitating the transfer of said properties and is not to be considered as a bonus upon said advancement of money." The court has found, upon sufficient evidence, that Farrington did nothing to facilitate the transfer of said properties. Thereafter another note was substituted for the note in question for $100,000, instead of $110,000 payable on demand. While the transaction strongly suggests a usurious attempt, the court has found that there was no usury. Usury was not pleaded in the answer. Moreover, the agreement, under which the loan was made, upon its terms stated that the $10,000 included in the note was not as a bonus for the loan of the money, but for services of Farrington in facilitating the transfer of these properties. With these facts found I am not disposed to interfere with the finding of the court that no usury exists, and that there was owing to the plaintiff Farrington the sum of $100,000. Inasmuch as the plaintiff performed no services in facilitating the transfer of the property, the $10,000 has not been earned, and the consideration of the $110,000 note to that extent fails.

Of this $2,200,000 in stock and bonds, the contemplated con-

sideration of the transfer of this Stoker stock, $400,000 was to be paid to Carey; and, while it is not so explicitly found, the evidence is that Carey was to pay Tevis out of this $400,000, and one Smith, who introduced Tevis to Carey, such commissions as they might have earned in the transaction; and it has been found that this agreement of the Steel Company of America to deliver $210,000 of these bonds was for the delivery of part of the $400,000 bonds and stock that under the agreement between the stockholders was to go to Carey, and from which these commissions were to be paid. Carey had in his possession eighty-two per cent of the stock of the Stoker Company, which included about 2,400 shares which he owned personally. The court has found upon sufficient evidence that upon the thirteenth day of June, the date fixed for the final consummation of the contract between the Stoker Company and the Steel Company of America, it was represented in the presence of the plaintiff Farrington that the Garford Company and the Automatic Machine Company not only had consented to transfer their stock to the Steel Company of America, but that the stock was already on its way, but had not been received. It was also found, I think, upon sufficient evidence that Farrington had knowledge of the condition under which the stock of the Stoker Company, held by Carey and belonging to other stockholders, was to be delivered to the Steel Company of America, that is, only upon condition that the Garford Company and the Automatic Machine Company should join in the merger.

It seems to have been assumed, not only by Carey, but by Farrington, as well, and the others, that the representation made upon the thirteenth day of June, to the effect that the stock of the Garford Company and the Automatic Machine Company was on its way, was true, and that these companies had agreed to join in the merger in the Steel Company of America, and, upon that mistaken assumption, Carey transferred to the Steel Company of America the eighty-two per cent which he held of the stock of the Stoker Company, and what I would call *ad interim* certificates were issued upon the same assumption. With the authority of Carey to transfer the stock of the other stockholders of the Stoker Company only upon a condition which was undoubtedly known by Farrington, it was both the right and the duty of Carey, upon ascertaining that the Garford Company and the Automatic Machine Company had refused to join, to withdraw that stock from the Steel Company of America, which was done. With this knowledge, therefore, of Farrington of the condition under which the stock was held and transferred to the Stoker Company, I am unable to find any equity which the plaintiff has to impress a lien for the

moneys loaned by the plaintiff upon the stock of the other stockholders which Carey held burdened with this condition. The conclusion of the trial court, therefore, was, I think, right in holding that that stock was not burdened with the payment of any part of this $100,000.

As to the claim of the plaintiff for a lien on the stock of the other stockholders thus transferred, it might be added that, if that transaction had been completed, these other stockholders would have been entitled to a similar *ad interim* certificate, which would have given to these other stockholders an equity equal to the plaintiff's equity, and, without a superior equity existing in the plaintiff, he can have no lien upon the shares of these other stockholders to secure the moneys advanced upon the mistaken assumption of a fact, the existence of which it made the condition of the authority of Carey to transfer the stock of these other stockholders to the Steel Company of America.

As to the stock owned by Carey himself, however, a different proposition arises. If he had actually received the moneys of the plaintiff and had put up as collateral thereto his 2,400 shares of stock in the Stoker Company, it would seem that the plaintiff might rely upon that security, notwithstanding both the plaintiff and Carey expected that the final merger would be consummated. The money was advanced upon that security, and so understood by Carey, and, notwithstanding that Carey expected that the merger would be completed, nevertheless, he took his chances upon the final consummation thereof when he took the money and put up this stock as collateral. The plaintiff may, therefore, insist upon his security of that stock, represented, as it is, by this *ad interim* certificate of the Steel Company of America, which had its sole value, with the exception of about $5,000 in the stock transferred by Carey to the Steel Company of America. While Carey had no right to deposit the stock of the other stockholders upon any such assumption, he might take the chance for himself; and, having taken that chance and received the money upon such security, it would seem that equity would impress upon that stock a lien for the purpose of securing the money which Carey received from the plaintiff upon the faith thereof. If this full $100,000 had been loaned to Carey for Carey's purpose upon a mistaken assumption of facts, the same reasoning would hold Carey personally liable for the full $100,000. By the contract, however, between the plaintiff and Tevis, it was clearly understood that this $100,000 was, in part at least, for the benefit of Tevis. The contract was made by him. The note was made by him, and it was from Tevis that the plaintiff received the *ad interim* certificate for the $210,000

bonds and some other additional securities, and it is only because part of these moneys were not passed over to Tevis, but were retained by Carey and are now held by him, that the plaintiff has the right of action against Carey to the extent of the moneys so retained, to recover as for moneys had and received.

At the same time that this *ad interim* certificate was issued to Carey for $210,000, there was also issued to him a further *ad interim* certificate for upwards of $700,000, as representing the bonds that the other shareholders were to receive for the stock of the Stoker Company transferred by Carey. This other *ad interim* certificate was apparently surrendered at the time that the stock was returned by the Steel Company of America, and no claim is made thereunder.

In the defendant's brief upon this appeal much stress is laid upon the point that the plaintiff was the secretary and a director of the Steel Company of America, and, therefore, must have been deemed to have had knowledge of all the facts known to the other members of the Steel Company of America. But the plaintiff was elected upon the morning of the thirteenth, and this transaction occurred upon the afternoon of the same day, and, upon the plaintiff's evidence, as well as upon the presumed fact, the plaintiff had no further knowledge of the existing situation than had Carey himself, who was one of the active participants in the effort to secure the merger of these several companies in the Steel Company of America.

The personal judgment against the defendant Carey should, therefore, be modified so as to hold him liable for $60,000 of the $100,000 received, with interest from the time of its receipt; and the judgment, as thus modified, should be affirmed, without costs to either party.

LAUGHLIN, PAGE and MERRELL, JJ., concur; DOWLING, J., dissents.

DOWLING, J. (dissenting):

I dissent and vote for affirmance.

Judgment modified as directed in opinion and as so modified affirmed, without costs. Settle order on notice.